## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RONNY RUBEN CARREDO,

                Plaintiff,

      v.

HUDSON COUNTY CORRECTIONS, *et al.*,

           Defendants.

Civ. Action No. 22-2122 (JXN)(CLW)

**OPINION**

**NEALS**, District Judge:

Before the Court is *pro se* Plaintiff Ronny Ruben Carredo's ("Plaintiff") civil rights Complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Based on his affidavit of indigence (ECF No. 1-1), the Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)

The Court must now review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated herein, Plaintiff's Complaint is proceeded in part and dismissed in part.

### I.      BACKGROUND

The Court construes the factual allegations of the Complaint as true for purposes of this screening only. On or about April 12, 2022, Plaintiff, a pre-trial detainee confined in Hudson

County Correctional Facility ("HCCF"), in Kearney, New Jersey, filed his Complaint in this matter. (*See* ECF No. 1.) The Complaint raises claims regarding the conditions of confinements at HCCF due to COVID-19, a Fourteenth Amendment excessive force claim, a Fourteenth Amendment failure to provide medical care claim, and a First Amendment access to courts claim against HCCF, Lieutenant Kevin Dillie, Ronald P. Edwards, Bonneti Emmello, Officer Beltran, Sally Perkins, Allen LeaMarie, Sergeant Ahmed Elkholy, and Sergeant Zarra Bonno. (*See generally* ECF Nos. 1 and 1-2.)[1]

Plaintiff submits that between May and June 2020, Plaintiff was forced to shower with his hands handcuffed. (ECF No. 1 at 5.) Plaintiff further submits that in March 2020, he was assaulted by inmates and officers, and in May 2020, he was assaulted by corrections officers. (*Id.*)

Plaintiff claims that on May 18, 2020, Wellpath and Hudson County failed to follow CDC guidelines and isolate and monitor for Covid symptoms. (*Id.* at 6.) Plaintiff submits that on August 15, 2020, Wellpath and Hudson County failed to provide Plaintiff medical care and failed to follow CDC guidelines with respect to Covid. Plaintiff submits that Hudson County failed to adhere to "10A rules and regulations" regarding recreation, exercise, nutrition, hygiene, excessive lockdown, law library, accessibility, access to mental health, phone restrictions, food handling, exposure to dangerous diseases, and exposure to mold and asbestos. (*Id.*) The Complaint alleges that on January 4, 2022, Plaintiff submitted an electronic message complaining of Covid symptoms and he was not provided medical care. (*Id.*) Plaintiff alleges that he informed Defendant Bono of his symptoms but Defendant refused to provide medical care. (ECF No. 1-2 at 2.) Plaintiff also

---

[1] Plaintiff submitted an attachment to his Complaint in which he listed the Defendants and provided additional factual allegations. (See ECF No. 1-2.) The Court considers the facts pled within the attachment in combination with Plaintiff's Complaint.

requested to see "mental health" for stress and anxiety, and renewal of his medication, which was not provided. (ECF No. 1 at 6.)

On March 21, 2022, Defendants Beltran and Emmello handcuffed Plaintiff behind his back, accused him of resisting, and proceeded to "push up against his back ruffly [sic]." (ECF No. 1-2 at 1.) Defendant Emmello twisted the handcuffs to cause Plaintiff pain. (*Id.*) Defendants then moved Plaintiff to the second floor of the unit, where they uncuffed him. (*Id.*) While on this unit, Plaintiff claims that Defendant Beltran punched him in the back of the head and Defendant Emmello "maced" him.[2] (*Id.*) Although it is not clear, it appears that Plaintiff was charged with assaulting Defendant Beltran on March 22, 2022. (*Id.*) At his hearing, Plaintiff informed Defendants Elkholy and LeaMarie that his toilet was covered in feces, the vent was covered in toilet paper, the walls have yellow fluids, the bed is full of rust, and the room is contaminated with mice. (*Id.*) Defendant LeaMarie advised Plaintiff to follow the rules in order to avoid these conditions. (*Id.*)

Plaintiff seeks injunctive and monetary damages.

## II.    STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon

---

[2] Plaintiff alleges he was sexually and physically assaulted. However, he only alleges facts of a physical assault. Therefore, the Court considers the allegations regarding the physical assault only.

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding *in forma pauperis*. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B) or 1915A is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.    DISCUSSION

In the Complaint, Plaintiff alleges that Defendants are liable to him under 42 U.S.C. § 1983 based on claims of excessive force, conditions of confinement, denial of medical care, and denial of access to the courts. (*See generally* ECF Nos. 1 and 1-2.) A plaintiff may have a cause of action

under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

**1. Excessive Force**

The Complaint raises a §1983 Fourteenth Amendment excessive force claim against Defendants Beltran and Emmello.[3] Plaintiff claims that on March 21, 2022, Defendants Beltran and Emmello assaulted him without provocation when they handcuffed him, pushed him, punched him in the head, and "maced" him.  (ECF No. 1-2 at 1.)

For a pretrial detainee to state a Fourteenth Amendment due process violation for use of excessive force by a state actor, he or she must allege sufficient facts to show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 389, 397 (2015); *see Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021). At this early stage of screening, Plaintiff has plead sufficient facts to state a Fourteenth Amendment excessive force

---

[3] Plaintiff states that he is a pre-trial detainee. As such, his excessive force claim arises under the Fourteenth Amendments' Due Process Clause. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); accord *Graham v. Conor*, 490 U.S. 386, 395 n.10 (1989) (the "Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment.").

claim. As such, Plaintiff's excessive force claim against Defendants Beltran and Emmello shall proceed.

### 2. Conditions of Confinement

As best the Court can construe, Plaintiff appears to allege that confinement at HCCF during the COVID-19 pandemic and the conditions of his cell in March 2022 amount to unconstitutional punishment. (*See* ECF No. 1 at 6; ECF No. 1-2 at 1.)

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), officials may not punish detainees before a court convicts them. *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*). To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to "punishment." *See Bell*, 441 U.S. at 538 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests . . . under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.")

"[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Hubbard II*, 538 F.3d at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden*

6

*York Cty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (2005) (*Hubbard I*)).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitation on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546. As the Supreme Court cautioned in *Bell*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to the expert judgment in such matters.

441 U.S. at 540 n.23. The deference to prison officials' judgment is especially strong in the context of an "unprecedented" situation like COVID-19, where "responsive measures [were] specifically implemented to detect and to prevent spread of the virus." *Hope*, 972 F.3d at 327 (concluding that conditions of confinement during COVID-19 did not amount to unconstitutional punishment); *McClain v. United States*, No. 21-4997 (SDW), 2021 WL 4820629, at *3–4 (D.N.J. Oct. 15, 2021) (dismissing without prejudice conditions-of-confinement claim by pretrial detainee where "restrictions confining prisoners to their cells for the majority of their days and denying in person family visits during COVID-19-related lockdowns" were "rationally related to a legitimate purpose – controlling the threat of COVID-19").

Here, Plaintiff has not stated a claim for relief regarding the COVID-19 conditions of confinement. Plaintiff alleges, in a conclusory manner, that Hudson County failed to follow the

Centers for Disease Control and Prevention ("CDC") guidelines concerning COVID-19 and to adhere to "10A rules and regulations" regarding recreation, exercise, nutrition, hygiene, excessive lockdown, law library, accessibility, access to mental health, phone restrictions, food handling, exposure to dangerous diseases, and exposure to mold and asbestos. (ECF No. 1 at 6.) Plaintiff, however, neither identifies what the guidelines and regulations were at the time, nor does he explain how the HCCF violated his constitutional rights by not following said guidelines and regulations. Thus, the Court is unable to assess the totality of the circumstances to determine whether the HCCF's actions were "reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 549. Accordingly, Plaintiff's claim that confinement at HCCF during the COVID-19 pandemic amounts to unconstitutional punishment is dismissed without prejudice.

Notwithstanding the above, Plaintiff does sufficiently assert a claim for conditions of confinement related to the condition of his cell in March 2022. In the Complaint, Plaintiff alleges that he informed Defendants Elkholy and LeaMarie that his toilet was covered in feces, the vent was covered in toilet paper, the walls had yellow fluids, the bed was full of rust, and the room was infested with mice. (*Id.*) In response, Defendant LeaMarie advised Plaintiff to follow the rules in order to avoid these conditions. (*Id.*) Accepting these allegations as true, the Court finds that Plaintiff has alleged sufficient facts to allow his Fourteenth Amendment conditions of confinement claim to proceed against Defendants Elkholy and LeaMarie.

### 3. Denial of Medical Care

Petitioner alleges that he was denied medical care. Because Plaintiff was a pretrial detainee at the time of the alleged violations, Plaintiff's claims fall under the Fourteenth Amendment's due process clause. "The Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a

convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The Court will therefore review Plaintiff's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment. *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019).

To state an Eighth Amendment claim, a plaintiff must allege facts indicating that defendants were deliberately indifferent to his or her serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (second alteration in original)). The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 197).

According to the Complaint, on January 4, 2022, Plaintiff submitted an electronic message complaining of COVID-19 symptoms and advising that he was not provided medical care. (ECF No. 1 at 6.) Plaintiff alleges that he informed Defendant Bono of his symptoms but Defendant Bono refused to provide medical care because Plaintiff looked healthy. (ECF No. 1-2 at 2.) Plaintiff also alleges that he requested to "see mental health" for stress and anxiety, and a doctor for renewal of his medication, which was not provided. (ECF No. 1 at 6.)

Construing the facts in favor of Plaintiff, the Court finds that Plaintiff has not alleged sufficient facts indicating that Defendants were deliberately indifferent to a serious medical need. In the Complaint, Plaintiff alleges that he suffered from COVID-19 symptoms. Plaintiff, however, neither identifies what those symptoms were, nor does he discuss the severity of the symptoms. Plaintiff's omission prevents the Court from determining whether Plaintiff's medical needs were serious and that Defendant Bono was deliberately indifferent to a serious medical need. *See Natale*, 318 F.3d at 582 (finding Plaintiff must plead facts that show a serious medical need.) Accordingly, Plaintiff's claim for denial of medical care is dismissed without prejudice

### 4. Access to the Courts

The Court construes the Complaint as raising a First Amendment access to courts claim. (*See* ECF No. 1-2 at 4.) "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Two general categories of denial of access to the courts claims exist: (1) claims that systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the impediment has been removed; and (2) claims of specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future. *Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002). Regardless of the category, a plaintiff must identify a "nonfrivolous," "arguable" underlying claim and must address the underlying claim by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at 415–16. In other words, a plaintiff alleging a denial of access to the courts claim must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (A pretrial detainee "making an access to courts claim is required to show that the denial of access caused

actual injury.")

Against that legal background, Plaintiff has not alleged sufficient facts to support a denial of access to courts claim. Plaintiff alleges that on March 24, 2022, Defendant Perkins refused to provide Plaintiff with the necessary material to stay in contact with his family and lawyer and was biased against Plaintiff's case. (ECF No. 1-2 at 4.) Plaintiff, however, does not allege that he missed any deadlines or suffered any prejudice as a result of the prison officials' alleged actions. As noted above, a prisoner making an access-to-courts claim is required to show that denial of access caused actual injury. *See Tinsley*, 369 F. App'x at 381. Because Plaintiff has not alleged that he suffered from any "actual injury" resulting from the prison officials' alleged actions, Plaintiff's access-to-courts claim cannot proceed.  Accordingly, this claim is dismissed without prejudice.

### 5. Supervisor Liability Claim

The Complaint fails to state a supervisor liability claim against Director of HCCF Robert Edwards. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. "Only those defendants whose inactions or actions personally caused [Plaintiff's]

11

injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990).

Here, Plaintiff does not allege that Defendant Edward was involved in establishing a policy, practice, or custom that harmed Plaintiff. Nor does he allege that Defendant Edwards participated in any harmful or offending conduct towards Plaintiff, directed anyone to violate Plaintiff's rights, or had knowledge of and acquiesced to the conditions at HCCF. Aside from the bald assertion that Defendant Edward was responsible for the operations at HCCF, the Complaint does not contain sufficient factual matter against Defendant Edward. *See Twombly*, 550 U.S. at 555 (finding Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.) Accordingly, the supervisor liability claim against Defendant Edward is dismissed without prejudice.

To the extent Plaintiff is attempting to allege § 1983 claims against Hudson County he has failed to state a claim for relief. The liability of a municipality, like Hudson County, under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 US. 658 (1978). Hudson County may not be found liable simply because it employs wrongdoers. *See id.* at 691-92; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Instead, Plaintiff must assert facts showing that Hudson County itself had a relevant policy or custom, and that the policy or custom caused a violation of Plaintiff s constitutional rights. *See Natale*, 318 F.3d at 583-84; accord *Jiminez v. All American Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007) (stating that a plaintiff must show a "direct causal link between a ... policy or custom and the alleged constitutional deprivation.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Here, the Complaint is devoid of any factual allegations showing that Hudson County has a policy or custom in place that violated Plaintiff's constitutional rights. Accordingly, Plaintiff has

failed to state a claim for relief against Hudson County and the Complaint is dismissed without prejudice against this Defendant.

### 6. Persons Amendable to Suite under Section 1983

As best the Court can construe, Plaintiff appears to assert a Section 1983 claims against HCCF.[4] Section 1983 imposes liability on "[e]very person who, under color of [State law] . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). To be liable under Section 1983, therefore, a defendant must be a "person." *See id.* It is well-established that state prisons and state agencies such as HCCF are not "persons" subject to liability under Section 1983. *See Almonte v. United States*, No. 17-5427, 2018 WL 3492146, at * 3 (D.N.J. July 19, 2018) (finding Hudson County Correctional Facility is not a person subject to suit under § 1983); *see also Barrett v. Essex Cty. Corr. Facility*, No. 15-595 SDW, 2015 WL 1808523, at *3 (D.N.J. Apr. 16, 2015) ("A county jail, such as the Essex County facility, is not a person subject to suit under § 1983.") (citing *Kitchen v. Essex Cnty, Corr. Facility*, No. 12-2199, 2012 WL 1994505, at *3 (D.N.J. May 31, 2012)).

Because HCCF is not a "person" subject to liability under Section 1983, Plaintiff claims against HCCF must dismissed with prejudice. *See Almonte*, 2018 WL 3492146, at *3.

### 7. Personal Involvement Requirement

As explained above, a defendant in a civil rights action must have personal involvement in the alleged wrongs. *Rode*, 845 F.2d at 1207. Section 1983 liability, therefore, requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which

---

[4] To the extent that Plaintiff meant to name the "Hudson County D.O.C." as a defendant in this action, the Court notes that the name does not appear in the body of Plaintiff's Complaint. Nevertheless, the Court believes that Defendant Hudson County Correctional Facility would be the same Defendant as "Hudson County D.O.C." Therefore, the Court will not address that Defendant separately.

defendants played "no affirmative part in depriving any [one] . . . of any constitutional rights . . . ." *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976). In other words, to establish Section 1983 liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Although Plaintiff lists Lieutenant Dilly as a defendant in the caption of his Complaint, Plaintiff's does not include any allegations against this Defendant.  Thus, Plaintiff did not plead sufficient facts to state a Section 1983 claim and the Court will dismiss Plaintiff's Section 1983 claim against Lieutenant Dilly without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the Court will proceed Plaintiff's Fourteenth Amendment excessive force claim against Defendants Beltran and Emmello. The Court will also proceed Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Elkholy and LeaMarie. The Court will dismiss with prejudice Plaintiff's Section 1983 claims against Hudson County Correctional Facility for failure to state a claim. The Court will dismiss the remainder of the Complaint without prejudice. An appropriate Order follows.


**DATED**: June 27, 2022



s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
**United States District Judge**

14